| STATE OF INDIANA | ) | IN THE ST. JOSEPH _____ COURT |
| --- | --- | --- |
| | ) SS: | |
| ST. JOSEPH COUNTY | ) | CAUSE NO. 71C01-2108-CT-000295 |

| | |
| --- | --- |
| BILL MAY, NIKOLAS SZYMAREK, TERIANNA SHAW, and GREGORY DEBERRY, on behalf of themselves and others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| NORTHERN INDIANA MAGNETIC RESONANCE CENTER, LLP and X-RAY CONSULTANTS, INC., | ) ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

The plaintiffs, Bill May ("Mr. May"), Nikolas Szymarek ("Mr. Szymarek"), Terianna Shaw ("Ms. Shaw"), and Gregory DeBerry ("Mr. DeBerry"), by counsel, for their Class Action Complaint against the defendants, Northern Indiana Magnetic Resonance Center, LLP ("MRI Centers") and X-Ray Consultants, Inc. ("XRC"), states and alleges as follows:

## NATURE OF THE ACTION

1. The plaintiffs bring this action to secure redress for the predatory and unlawful balance billing practices of the MRI Center and XRC.

## PARTIES, JURISDICTION, AND VENUE

2. Bill May ("Mr. May") is a resident of the state of Indiana who resides in St. Joseph County.

3. Nikolas Szymarek ("Mr. Szymarek") is a resident of the state of North Carolina who was involved in a motor vehicle accident in St. Joseph County resulting in medical services rendered by the defendants.

4. Terianna Shaw ("Ms. Shaw") is a resident of the state of Indiana who resides in St. Joseph County.

5. Gregory DeBerry ("Mr. DeBerry") is a resident of the state of Indiana who resides in St. Joseph County.

6. MRI Centers is a limited liability partnership organized and existing under the laws of the state of Indiana with a principal office located at 17333 Dugdale Drive, South Bend, Indiana 46635.

7. MRI Centers is a provider of specialty MRI services, including MR Arthrograms, MR Angiograms, breast MRI scanning with CAD analysis, cardiac and fetal MRI scanning, radiation therapy and neurosurgery planning MRI procedures, MRI guided breast biopsies or needle localizations, as well as pediatric and adult sedation services in conjunction with MRI scanning.

8. XRC is a corporation organized and existing under the laws of the state of Indiana with a principal office located at 121 S. St. Louis Blvd., South Bend, Indiana 46617-2924.

9. XRC is a regional radiology group with many subspecialties in interventional radiology and various types of imaging, such as computerized tomography (CT) scans, positron emission tomography (PET) scans, and magnetic resonance imaging (MRI).

10. Upon information and belief, XRC performs administrative functions for MRI Centers including billing insurance providers and patients for services rendered.

11. MRI Centers and XRC provide services to many of the hospitals and medical providers located in northern Indiana and southwestern Michigan.

12. The Court has jurisdiction over this matter pursuant to Ind. R. Trial P. 4.4 because MRI Centers and XRC rendered services in and do business in the state of Indiana.

13. Venue is preferred in St. Joseph County pursuant to Ind. R. Trial P. 75 as the county where the principal offices of MRI Centers and XRC are located.

## FACTS SUPPORTING ALL CAUSES OF ACTION

14. Each of the plaintiffs in this case was victimized by the predatory and unlawful balance billing practices of MRI Centers and XRC. The plaintiffs seek redress for themselves and on behalf of a class of similarly situated individuals who were also subjected to balance billing.

15. "Balance billing" is an improper billing practice that comes in two forms. The first involves the practice of billing an insured or Medicaid/Medicare enrollee for an amount in excess of the contracted or approved amount for covered services. The second involves billing an insured or Medicaid/Medicare enrollee for an amount that is required to be paid by the health insurer or government program. In either form, balance billing is prohibited by both Indiana and federal law.

16. Indiana law broadly prohibits a health care provider from billing an insured "for any amount that exceeds: (1) the payment made by the association under the association policy for eligible expenses incurred by the insured; and (2) any copayment, deductible, or coinsurance amounts applicable under the association policy." Ind. Code § 27-8-10-3.2.

17. Federal law prohibits medical providers from balance billing Medicaid patients if the provider has already billed and accepted payment from Medicaid. *See* 42 USC § 1396a.

18. Likewise, participating providers of Medicare cannot balance bill Medicare patients because they have accepted the beneficiary's assignment of Medicare benefits and Medicare's approved payment amounts as full payment for the Medicare-covered services. *See* 42 USC § 1395cc.

19. Nonparticipating providers of Medicare can only balance bill a Medicare beneficiary an amount that is fifteen percent (15%) more than the Medicare-approved payment

amount for nonparticipating physicians for the service. *See* 41 USC § 1395w-4.

20. Despite these clear state and federal prohibitions on balance billing, MRI Centers and XRC have engaged in a deliberate, unlawful scheme to balance bill patients for amounts far exceeding contracted and approved payment amounts.

21. The primary target of this scheme are patients who have been injured by third-party negligence such as in a car crash. Generally, upon discovering that a patient was injured by the actions or omissions of a third party, MRI Centers and XRC refund any payments that have been made by insurance or government programs and then re-bill the injury victim for the full list price of the service provided. This practice results in injury victims being billed for hundreds or thousands more for covered or approved services than non-injured counterparts. And it has occurred with respect to each of the named plaintiffs.

22. Specifically, on or about December 20, 2019, Mr. Szymarek was injured in a motor vehicle accident and went to St. Joseph Regional Medical Center ("SJRMC") for treatment. Mr. Szymarek had Blue Cross Blue Shield health insurance and medical payments coverage through his Erie Automobile insurance policy.

23. On December 20, 2019, Mr. Szymarek received a CT scan of his cervical spine. On December 23, 2019, Mr. Szymarek returned to SJRMC and received a CT scan of his head, a CT Angiography, and a chest X-ray.

24. On or about March 27, 2020, Mr. Szymarek received a bill from XRC showing total gross charges of $946.00, contractual adjustments of $556.20, an insurance payment of $13.44, and a patient responsibility balance of $376.36.

25. When XRC was informed that Mr. Szymarek had been in an accident, it re-billed its services, increasing his patient responsibility balance to $697.97.

26. On or about July 11, 2020, Mr. May was in a motor vehicle accident. On or about July 13, 2021, he received an MRI of his leg. Mr. May had medical payments coverage through his Allstate auto insurance.

27. Mr. May received a bill for $1,003.48 for the MRI, which he tendered to Allstate for payment. Allstate issued a check to Mr. May for the covered amount of $903.13.

28. On September 16, 2020, Mr. May tendered the payment of $903.13 to MRI Centers for payment of the outstanding bill. Having learned that Mr. May was injured in an auto accident, MRI Centers returned the Allstate payment and re-billed the MRI for $2,125.00 with a letter stating that "whatever isn't paid by Allstate is the patient's responsibility."

29. On or about March 4, 2019, Ms. Shaw was injured in a motor vehicle accident. Ms. Shaw was a Medicaid beneficiary.

30. Between May 28, 2019 and September 2, 2019, Ms. Shaw received multiple services from XRC at SJRMC. She was initially sent a bill with gross charges of $1,119.00 that reflected a zero patient responsibility balance after contractual adjustments and payments by Medicaid.

31. After XRC discovered that Ms. Shaw was in a motor vehicle accident, it refunded the payments received by Medicaid and re-billed Ms. Shaw $1,228.00.

32. On or about November 12, 2018, Mr. DeBerry was injured in a slip and fall incident. At the time of the incident, he was a Medicare recipient.

33. On or about November 14 and 16, 2018, Mr. DeBerry received services from both MRI Centers and XRC. After Medicare payments and adjustments, the patient responsibility balance due on his initial bill from MRI Centers was $27.85 and from XRC was $39.36. After discovering that Mr. DeBerry was injured in a slip and fall incident, MRI Centers and XRC later

re-billed Mr. DeBerry for $2,033.75 and $1,247.00 respectively.

34. Upon information and belief, balance billing is a regular practice of both MRI Centers and XRC. On multiple occasions, MRI Centers and XRC have been informed that that these practices constitute improper balance billing and should be ceased. XRC incorrectly contended that it was entitled to balance bill because it "did not have a contract with the attorney" and that the attorney should not benefit from the adjustment.

## COUNT I: BREACH OF CONTRACT

35. The plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

36. Each of the plaintiffs entered into a Financial Agreement, Authorization, Assignment of Benefits, and Patient Consent Form (the "Agreement") or similar agreement with MRI Centers and XRC. A true and accurate copy of the Agreement is attached as Exhibit 1. The Agreement constitutes a valid and binding contract between the parties.

37. In the Agreement, MRI Centers and XRC agree to submit claims to the health care plan or insurance company of the plaintiffs. MRI Centers and XRC further accepted assignment of all insurance benefits payable to MRI Centers and XRC.

38. Accordingly, the plaintiffs agreed to bear responsibility for deductibles, co-insurance, charges for non-covered services, or unnecessary or unauthorized services.

39. MRI Centers and XRC breached the Agreement by, among other things, (a) refusing to apply contractual discounts, (b) refusing to accept insurance payments, (c) refunding insurance payments, and (d) balance billing the plaintiffs for the full cost of covered, necessary, and authorized services rendered.

40. By doing so, MRI Centers and XRC caused damages to the plaintiffs, including but

not limited to (a) the loss of contractual discounts to which the plaintiffs are entitled under their health care plans; (b) the loss of insurance payments to which the plaintiffs are entitled under their health care plans; and (c) out of pocket payments for the full list price of services rendered.

41. The plaintiffs performed all conditions precedent to the Agreement.

WHEREFORE, the plaintiffs demand judgment in their favor and against the defendants in an amount that will reasonably compensate them for their damages, and for all other just and proper relief.

### **COUNT II:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

42. The plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

43. Each of the plaintiffs is a Medicaid enrollee, a Medicare enrollee, or is privately insured and therefore is entitled to certain contractual health insurance benefits, including contractual discounts and benefit payments.

44. The defendants were aware of these relationships by virtue of collection insurance information from the plaintiffs and in fact accepted assignment of benefit payments owed to the plaintiffs under their respective contractual relationships.

45. The defendants intentionally interfered with these relationships by, among other things, (a) depriving the plaintiffs of contractual discounts and benefit payments and (b) returning benefit payments and balance billing the plaintiffs.

46. As a result, MRI Centers and XRC caused damages to the plaintiffs, including but not limited to (a) the loss of contractual discounts to which the plaintiffs are entitled under their health care plans; (b) the loss of insurance payments to which the plaintiffs are entitled under their health care plans; and (c) out of pocket payments for the full list price of services rendered.

WHEREFORE, the plaintiffs demand judgment in their favor and against the defendants in an amount that will reasonably compensate them for their damages, and for all other just and proper relief.

### COUNT III:  INDIANA DECEPTIVE CONSUMER SALES ACT

47.	The plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

48.	Pursuant to the Indiana Deceptive Consumer Sales Act, a supplier who commits an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction violates the act.

49.	The plaintiffs are "person[s]" as that term is defined in Indiana Code § 24-5-0.5-2(a)(2).

50.	The defendants are "supplier[s]" as that term is defined in Indiana Code § 24-5-0.5-2(a)(3).

51.	The plaintiffs each received services from MRI Centers or XRC in a "consumer transaction" as that term is defined in Indiana Code § 24-5-0.5-2(a)(1).

52.	A supplier violates the Indiana Deceptive Consumer Sales Act when it commits an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.

53.	MRCI Centers and XRC violated the Indiana Deceptive Consumer Sales Act by, among other things, balance billing the plaintiffs in violation of Indiana law.

54.	These deceptive acts are incurable because, among other reasons, they are part of a scheme or artifice by MRI Centers and XRC to defraud or mislead consumers.

55.	As a direct and proximate cause of the acts and omissions of the defendants, the plaintiffs suffered actual damages.

56. The Indiana Deceptive Consumer Sales Act permits the plaintiffs to recover their actual damages or statutory damages of $500 per violation, whichever is greater, and attorneys' fees, along with $1,000 per violation or treble damages for willful acts.

57. An award of $1,000 per violation or treble damages and attorneys' fees is appropriate because the acts of the defendants were willful and showed a reckless disregard for the rights of the plaintiffs.

WHEREFORE, the plaintiff respectfully requests that the Court enter judgment in her favor and against the defendants, MRI Centers and XRC, as follows:  (a) Declaring that the practices of MRI Centers and XRC are unlawful and violate the Indiana Deceptive Practices Act; (a) awarding the plaintiff actual and statutory damages, including treble damages, in an amount to be determined at trial; (c) awarding the plaintiff her costs and reasonable attorney fees; and (d) awarding all other just and proper relief.

## COUNT IV:  CLASS ACTION CLAIMS

58. The plaintiffs incorporates and reallege the foregoing allegations of the Complaint as though fully set forth herein.

59. The plaintiffs bring each of the foregoing claims on behalf of a class pursuant to Ind. R. Trial P. 23, consisting of (a) all consumers, (b) who, within ten years of the filing of this action, (c) received services from MRI Centers or XRC, (d) and were the subject of balance billing practices.

60. Upon information and belief, the class is so numerous that joinder of all members is impractical.

61. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common question

includes (a) whether each class member received services from MRI Centers and XRC; (b) whether MRI Centers and XRC engaged in balance billing with respect to the class member; (c) whether such balance billing was part of a scheme or artifice to defraud or mislead consumers; and (d) the simple calculation of damages or uniform statutory damages.

62. The claims of the plaintiff are typical of the claims of the class members because, among other things, all of the class members received services from MRI Centers and XRC and were the subject of balance billing and therefore are entitled to actual and statutory damages.

63. The plaintiff will fairly and adequately protect the interests of the class.

64. The questions of law or fact common to the members of the class set forth above predominate over any questions affecting only individual members.

65. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

66. The plaintiffs have retained counsel with experience litigating class actions, consumer protection claims, and claims involving unlawful business practices.  Neither the plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against the defendants, MRI Centers and XRC, as follows:  (a) certifying a class action as set forth above; (b) awarding each class member statutory and actual damages; (c) awarding costs and reasonable attorneys' fees; and (d) awarding all other just and proper relief.

## **JURY DEMAND**

The plaintiffs demand a trial by jury of any and all issues so triable in the above-captioned matter.

                                                Respectfully submitted,

                                                PFEIFER MORGAN & STESIAK

                                                _____
                                                Ryan G. Milligan (#28691-71)
                                                Peter D. Hamann (#34615-45)
                                                James P. Barth (#33951-64)
                                                PFEIFER MORGAN & STESIAK
                                                53600 N. Ironwood Rd.
                                                South Bend, Indiana 46635
                                                Telephone: (574) 272-2870
                                                Facsimile: (574) 271-4329
                                                RMilligan@pilawyers.com
                                                PHamann@pilawyers.com
                                                JBarth@pilawyers.com

                                                *Counsel for the plaintiffs*